### Lossie v. Central Trust Company of Owensboro.

(Decided November 19, 1926.)

### Appeal from Daviess Circuit Court.

1. Deeds.—Allegations of petition to the effect that conveyance from son to mother was made under misapprehension in believing that it was necessary in order to defeat rights of others under will, by which mother was given life estate and son remainder in such property, held insufficient to authorize cancellation in that no fraud was pointed out, nor was any mention made of misrepresentation of facts.

2. Cancellation of Instruments.—The cancellation of an executed contract is the exertion of the most extraordinary power of the court of equity, which ought not to be exercised except in a clear case and on strong and convincing evidence.

3. Cancellation of Instruments.—Facts which merely raise a suspicion of fraud, mental·incapacity, undue influence, or duress are not sufficient to warrant cancellation of an executed instrument.

4. Wills.—Where testator, after making certain specific devises, gave the residuum of his estate to his sister for life with remainder to her son, no trust was created, although testator spoke of a trust and referred to sister as trustee for her son, since a trust is not created by referring to some one as trustee.

5. Trusts.—To constitute a "trust" there must be some subject matter, a trustee who has a legal but not equitable title to such subject matter, and a cestui que trust who has equitable but not legal title thereto.

6. Wills.—Gift under will of rents and profits of testator's property to sister as long as she lives held equivalent to a gift of the prop-

erty for life, since subject of devise may be described by designating its usufruct or dominion over it.

7.  Wills.—Devisee cannot claim both under and against a will.

FLOYD J. LASWELL, BEN D. RINGO, FOSTER HAYES, W. J. O'CONNER and MORRIS & JONES for appellant.

SANDIDGE & SANDIDGE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The appellant, whom we shall call the plaintiff, filed a petition in equity, seeking to secure the cancellation of a deed which he had made to his mother. A demurrer was sustained to his petition, and he has appealed. On April 21, 1913, the Daviess county court probated as the will of Frank Brooks, this paper:

"I, Frank Brooks, being of sound mind and disposing memory, do make and publish the following as my last will and testament:

"I first want all my debts paid. I want a marker at head of my grave same as my niece has.

"I give to my sister, Mary Lossie, fifteen thousand dollars, ($15,000.00); this devise is absolutely without any limitation whatever. I give to my sister all of my real estate to hold in trust for her son, Frank. My sister is to use all rents and profits for her own benefit. She is to be trustee without bond.

"My sister may give her son Frank of my estate after he is twenty-one years of age. She is to use her judgment.

"I give Zion Evangelical Church................$800.00
I give John Schultheise..........................  250.00
I give Jacob Schultheise........................  100.00
I give Louise Schulteise.........................  100.00
I give Earnest Schultheise.....................  100.00
I give Jacob Kohl..................................  100.00
I give Mrs. Tabitha Kock.......................  200.00
I give Esther Kock................................  100.00

"All the residue of my estate, not herein mentioned, whether real, personal or mixed, and wheresoever situated, I give to my sister to be held by her in trust for her son, Frank. After my sister's death her son Frank takes all the estate held in trust for him. Should Frank die leaving issue, then they take

same as Frank received, but should Frank die without issue then those above mentioned of those I devised to shall take my estate; that is, not until the death of my sister.  My sister is to be trustee without bond.  If ever there is any other trustee I demand bond.  I want my property kept insured, if any loss should be paid to my sister, property kept in good repair.  I don't want an inventory made of my estate.  This will written by myself.  December 30th, 1912.  Signed by myself,

"FRANK BROOKS.

This is to become part of my will.  I give to my sister in addition to what I gave her in this will, my home 500 St. Ann street.  Feb. 21, 1913.  Signed by myself,

"FRANK BROOKS."

Mary Lossie took charge of the property of Frank Brooks under this will.  On March 15, 1922, she deeded to Frank Lossie, her son, three pieces of the real estate that had formerly belonged to Frank Brooks.  Two days thereafter this real estate was by Frank Lossie conveyed to his mother.  On December 4, 1923, Mary Lossie died. On December 10, 1923, the Daviess county court probated this paper as her will:

"I, Mary Lossie, being of sound mind, do hereby make and declare this to be my last will and testament, hereby revoking any and all wills that I here heretofore made.

"I.   I direct that all my just debts and funeral expenses be paid as soon as practical after my death, and that a suitable marker, like my brother's or daughter's be placed at my grave.

"II.   I direct that the sum of three hundred dollars be deposited at the Central Trust Company of Owensboro, Kentucky, on interest, to remain intact, the interest to be used in keeping up our family lot in Elmwood Cemetery.  It is my desire and I request the Ladies' Aid of the Evangelical Church of Owensboro, Kentucky, to look after said lot and to use the interest from said three hundred dollars to defray the expenses of keeping said lot in proper condition.

"I give, devise and bequeath all the remainder of my property, both real and personal, to the Cen-

tral Trust Company of Owensboro, Kentucky, to be held in trust by it for my son, Frank W. Lossie, until he arrives at the age of thirty-five years, at which time I direct, devise and bequeath all of my said property to my son, Frank W. Lossie, to do with as he pleases, with the right to sell and convey same, and at his death what remains I devise and bequeath to his children, if he has any, and if he does not have any children, I give, devise and bequeath same to Mrs. Tabitha Kock, of Evansville, Indiana, Evangelical Chuch of Owensboro, Kentucky, Earnest Schultheis, Jake Schultheis and Louis Schultheis, of Troy, Indiana, to be divided equally among them, each taking a one-fifth interest.

"I direct that my trustee, Central Trust Company of Owensboro, Kentucky, sell and dispose of my home place situated at the corner of Fifth and St. Ann streets, in Owensboro, Kentucky, as soon as practical after my death, and not later than six months thereafter. It may sell same at private or public sale, for cash or as much as one-third cash and the balance in payments to be determined by said trustee.

"I direct that my trustee, Central Trust Company of Owensboro, Kentucky, pay to my son, Frank W. Lossie, the sum of one hundred dollars per month from the time of my death until he arrives at the age of thirty-five years, payable monthly. I further direct that if he should become sick or have an accident, that my trustee pay all of his expenses incurred on account of said sickness or accident.

"I direct that no inventory or appraisement of my estate be made in so far as same may be omitted by law, and that the Central Trust Company of Owensboro, Kentucky, be permitted to qualify as my administrator.

"In testimony whereof witness my signature this the 24th day of November, 1923.

"MRS. MARY LOSSIE."

On April 2, 1925, Frank Lossie began this action to cancel the deed made his mother on March 17, 1922. These are the allegations of his petition:

"Plaintiff states that at the time said deeds hereinabove mentioned were executed his said mother,

Mary Lossie, was as aforesaid,. his trustee under the will of said Frank Brooks and under her appointment and qualification by the Daviess county court and was acting as such, and as such trustee she held and had in her hands not only said real estate conveyed by said deeds but a large amount of personal property consisting of cash, bonds, notes and securities for money amounting in all to the value of about $23,000.00, all of which passed to her as said trustee under said will of said Frank Brooks; and he states that while under the provisions of said will the said trustee had power to convey said property to him as she did by said deed hereinabove first referred to, she had no power or right under said will or at all while still being and acting as trustee for this plaintiff to receive or accept from this plaintiff a conveyance of said property to her in her individual capacity and in her own right, and that the attempted conveyance of said property to her by said deed was and is void and of no effect whatever, and that the title to said property notwithstanding the execution of said deed by this plaintiff remained and still is in him.

"Plaintiff further states that there was no consideration whatever for the attempted conveyance by him to his said mother and trustee of said real estate; and that he received no property, advantage or consideration of any kind for said conveyance, nor did his said mother give up or surrender any property or advantage as a consideration for same, but the same was wholly voluntary and without consideration.

"He further states that at the time said deeds were executed, not only was his mother his trustee as aforesaid, but she was at the time a single woman, having been separated and divorced from her husband about 13 years before that time, and she was at the time about 55 years of age, and for a number of years, and especially since the death of said Frank Brooks as aforesaid she had been managing and caring for her own property and the property held in trust for this plaintiff and was an experienced and capable business woman, while at the same time this plaintiff was then 26 years of age and had never had any business experience whatever and had never before accepted or executed a deed of conveyance of

real estate or any similar instrument, and had all his life, and especially since the death of his said uncle, Frank Brooks, relied upon and wholly confided in his said mother and trustee in and for the proper management of his property and interests; that in the execution of said deed by him he did not know or understand that he was conveying or that said deed purported to convey to his mother in her own right said entire fee simple in and to said property. He states that under the will of said Frank Brooks and before the conveyance of said real estate to this plaintiff his mother was entitled to the income from said property during her natural life, and this plaintiff was willing that she should continue to receive and enjoy said income during her life, and he had no thought or intention by said deed of conveying to her any more or greater interest than that; that he did not consult any attorney or anyone else with reference to the execution of said deed and executed the same solely at his mother's request and in reliance upon her judgment; that he was wholly under her influence and for that reason alone executed said deed without understanding its purport or meaning as aforesaid; and he states that the same is not his act or deed.

*"He further states that his said mother in making the statement and representation to him with reference to the execution of said deeds hereinabove set forth either was herself mistaken and erroneously believed that the execution of said deed by this plaintiff to her was necessary in order to shut out any possible interest of the said persons named in the will of said Frank Brooks, or she knew that the same was not necessary, and intentionally misrepresented and untruly stated the facts as to the necessity for executing said deed and thereby deceived and misled this plaintiff,* not for her own personal advantage however, but in order that she might make the provision which she afterwards did make in her will with reference to said property and which she believed would be to the advantage of this plaintiff; that one of said things is true, but plaintiff does not know which of them is true, and he states that said statement and representation as to the necessity for making said deed was untrue

and that no such necessity existed, but that under the will of said Frank Brooks the deed of conveyance executed to this plaintiff by his said mother and trustee placed the title to said property in this plaintiff in fee simple, and that under said will, even if said conveyance had not been executed to this plaintiff, upon the death of said Mary Lossie before plaintiff's death plaintiff would have taken said property in fee simple, but he states that he believed and relied on said statement and representation and but for same would not have executed said deed.''

The trial court properly sustained a demurrer to his petition. These allegations are grossly insufficient. No fraud is pointed out, no mention is made of any misrepresentation of facts, and the allegations are principally conclusions of the pleader. The most that can be said for the allegations of this petition is that these parties did not understand what their rights were under the will of Frank Brooks, and Frank Lossie thinks now his mother may have erred in her statement to him of what his rights were. This may be true, but that is not enough to justify the cancellation of this deed. The cancellation of an executed contract is the exertion of the most extraordinary power of a court of equity, which ought not to be exercised, except in a clear case and on strong and convincing evidence. See Fields v. Walker, 200 Ky. 710, 255 S. W. 518; Larman v. Miller, 195 Ky. 654, 243 S. W. 939; Camp v. Kimberley, 188 Ky. 666, 223 S. W. 1005; 9 C. J. 1254, section 195.

An examination of the decisions of the court discloses a vast number of authorities to the same effect. Facts which merely raise a suspicion of fraud, mental incapacity, undue influence, or duress are not sufficient to warrant cancellation.

This case is the result of the expressions used by Frank Brooks in his will. The learned counsel of Frank Lossie would never for a moment regard these allegations as sufficient if they did not believe that by the will of Frank Brooks certain property was placed in the hands of Mary Lossie as trustee for Frank Lossie. Unless the relation of trustee and *cestui que trust* existed between this mother and son, to take this case out of the general rule, these allegations are insufficient. Therefore our first inquiry is, did a trust exist? This litigation well illustrates the wisdom of the trite and oft

quoted saying: "Lawyers need never fear a dearth of litigation so long as people write their own wills." Examining this will in the light of the opinion in Atkinson v. Kern, et al., 210 Ky. 824, 276 S. W. 977, we find this: After making certain specific devises, Frank Brooks gave the residuum of his estate to Mary Lossie for life with remainder to her son, Frank Lossie. No trust was ever created. True, he speaks of a trust and refers to Mary Lossie as trustee for Frank Lossie, but a trust is not created by referring to some one as a trustee. To constitute a trust, there must be, (1) some subject matter, (2) a trustee who has the legal but not the equitable title to this subject matter, and (3) a *cestui que trust* who has the equitable but not the legal title to this subject matter. The right of the beneficiary *is in* the trust; the obligation of the trustee *results from* the trust; and the right held is the *subject matter* of the trust. None of these is the trust itself. All together they constitute the trust. There can be no trust where there is no subject matter. There is none here. True, the testator says, "I give to my sister all of my real estate in trust for her son, Frank," and "All the residue of my estate . . . I give to my sister in trust for her son, Frank," but he also says, "My sister is to use all rents and profits for her own benefit. My sister is to have all rents and profits as long as she lives." Also, "After my sister's death her son Frank takes all the estate held in trust for him." The gift of the rents and profits of this property to Mary Lossie was equivalent to a gift of this property to Mary Lossie for life.

There are two ways in which the subject of a devise or conveyance may be described; one is by describing the thing itself by name or by metes and bounds, the other is by designating its usufruct or dominion over it. Thus a grant of the rents, issues and profits of a tract of land is uniformly regarded as a grant of the land itself. Caldwell v. Fulton, 31 Pa. St. 475, 72 Am. Dec. 760; Del. & R. Co. v. Sanderson, 109 Pa. St. 583, 58 Am. Rep. 743; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293, 22 A. 1035; 24 Am. St. 544.

Thus this property, as long as Mary Lossie lived, belonged to her. At her death, it belonged to Frank. These two estates, the life estate and the remainder, constituted the entire estate, and there was nothing left to become the subject matter of a trust, hence no trust

existed. From the use of the expressions, "trust," "trustee," etc., in the will of Frank Brooks, the plaintiff has conjured up a sort of phantasmagorial trust on which he bases his suit for cancellation, but with it eliminated, things are very much simplified, and we find this mother and son, both *sui juris,* and free from disabilities, dealing with each other not at arm's length, but arm in arm, and their purpose in so dealing with each other is apparent from that portion of his petition which we have copied and italicized above. From this, his purpose in making this deed is evident; his mother died sooner than he expected, and now he regrets, rues and wants to rescind his action. In trying to defeat the Schultheis and other devisees of his uncle, and deprive them of what he thought was theirs under his uncle's will, he has entrapped himself. He is in a poor position to ask a court of equity for relief.

His mother mingled this property with her own, and devised it with her other property to the defendant, in trust for him, as we have seen by her will copied above. It is well settled that a devisee can not claim both under and against a will. See Cavin v. Little, 213 Ky. 482, 281 S. W. 480.

The allegations of this petition fall far short of showing clearly and convincingly such fraud, duress, mistake or undue influence as is required to warrant the cancellation of a deed, made by parties who were both *sui juris* at the time.

The judgment is affirmed.