## Trustees of Congregational Church of Evarts v. Board of Trustees of Evarts Graded Common School District.

(Decided June 14, 1929.)

LEE & SNYDER for appellants.

FORESTER & CARTER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The trustees of the Congregational Church of Evarts, Ky., have appealed from a judgment canceling a deed by which the trustees of the Evarts common graded school district No. 2 conveyed to them two pieces of property, which are fully described in Deed Book 41, p. 545, in the office of the clerk of the Harlan county court.

In 1921 the school building in which the Evarts common graded school No. 2 was conducted was an old frame building that had been blown off the foundations, and was in such a condition that the board of trustees regarded it as beyond repair. They desired to construct a modern brick schoolhouse. The building they had was entirely inadequate if it had been in good repair. They had canvassed the situation and realized that the sum which they could obtain by bonding the district would fall far short of the sum they would need in order to erect the building they wanted. They had found some public spirited citizens who were willing, after this bond issue was voted, to execute notes, becoming liable thereon individually, and they proposed to use this money in the erection of a school building; but even with that they were still much short of the sum they needed.

There was an offset in the school property, and they decided to sell that and a 20-foot strip additional the full length of the school property. They did sell it to the trustees of the Congregational Church for $2,000, and they used that money, together with the money obtained by the bond issue and by the notes signed by the citizens to build a school house.

At the election in 1925 the personnel of the board of school trustees was changed, and the board of school trustees as now constituted regarded the sale made in 1921, as ill advised, and accordingly began this action against the trustees of the Congregational Church to cancel and rescind this conveyance. Considerable proof was taken. That taken on behalf of the church indicates that this property when sold brought all it was worth, while there was proof on behalf of the board of school trustees to show that this property was worth between $4,000 and $5,000 when it was sold. There is an entire absence of any evidence indicating fraud on the part of the board of school trustees who made this sale. By section 4471a1 Kentucky Statutes, this board of school trustees was and is a corporation with power to sue and be sued, to

contract and be contracted with, to acquire, hold, and convey any real or personal estate necessary and convenient for the use and purposes of the district, and by that statute this board of school trustees is given as much power in these regards and for such purposes as a natural person. This board is a continuing body. The personnel may change, but it is the same board, and this school district is in the same attitude that a natural person would be who, having sold his property and after waiting nearly five years, then decides he has made a bad trade, and wants to rescind it.

"The cancellation of an executed contract is the exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case and on strong and convincing evidence." Lossie v. Central Trust Co., 219 Ky. 1, 292 S. W. 338. The evidence here does not measure up to these requirements. Of course, looking back now, there are many witnesses that regard this as an unwise sale, but there are few men who have bought and sold property that cannot look back and see where they have made unwise sales. All of the members of the board of school trustees that signed this deed, except one who is dead, testified that they regarded this as a good price; that they would have sold this property to any one else just as readily as they did to the Congregational Church if they could have got more money for it. The property adjoined the property of the Congregational Church and it was naturally the most probable purchaser. The evidence convinces us that it paid all the property was worth when they bought it. "If courts of equity were to unravel all such transactions as these they would throw everything into confusion and set afloat the contracts of mankind." Black on Rescission and Cancellation, Sec. 169.

A contract cannot be rescinded merely because it later appears it is a bad bargain. A court might hesitate to decree specific performance of such a contract, but that is a very different question from its cancellation.

The proof shows that the minutes of the meeting of the board at which the resolutions for the sale of this property were adopted, were not written out at length in the minute book, but were written on a sheet of paper and pasted in the book. The board of school trustees insists that this was not a compliance with section 4473, Ken-

tucky Statutes, but that it is not the paper which they are seeking to cancel.

It follows therefore that the trial court erred in rescinding this contract.

The judgment is reversed.