## National Union Fire Ins. Co. v. Duvall et al.

(Decided March 16, 1937.)

J. W. CAMMACK and GORDON, LAURENT, OGDEN & GALPHIN for appellant.

L. M. ACKMAN for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

This action was instituted in the Owen circuit court by the National Union Fire Insurance Company against Harry Duvall, Lewis Holbrook, and Milton Duvall, to recover from appellee Harry Duvall the sum of $1,300.43, with interest from February 14, 1933, until paid, for advance commissions paid to him as the soliciting agent of the company on account of the cancellation of policies that he had ceased to be issued in Owen county on farm property against fire, windstorm, etc. The court adjudged that appellant was entitled to no relief and dismissed its petition. From that judgment, appellant appeals.

Harry Duvall was employed by appellant on November 7, 1929, as its local soliciting agent in Owen county, Ky. For the faithful performance of his duties as agent, a bond was required in the sum of $1,000, which was signed and executed by Lewis Holbrook and Milton Duvall. The contract of Harry Duvall was reduced to writing. The writing was signed and executed on November 7, 1929, by appellee. The amount of the commissions claimed by appellant as against appellee of $1,300.43 is practically conceded. Appellee in his answer admits the execution of the contract, but alleges as a defense that at the time, and after, the written contract was signed by him, appellant, through its special agent, Ben S. Street, agreed with him that no policies that might be obtained by him would be canceled, except on certain grounds, which were because of individual moral risk, such as insuring old, worthless, unprofitable, or unoccupied buildings, or overvalued buildings, or buildings that had defective flues, chimneys, stoves, pipes or furnaces, or property where the true title of which was not insured by the applicant for the insurance, and property where the true amount of incumbrances were not stated, and on policies where the applicant did not give the size, height, material, age, and distance from each other and from

all buildings so insured, or from parties who were slow pay or irresponsible, or who insured their property for more than two-thirds of its actual cash value; that all other policies sold by the defendant, the commission should be considered earned and he would not be compelled if the policies were canceled to pay to the company any part thereof. Appellee further alleged that this agreement was entered into by appellant as a change, modification, and in lieu of the written agreement, that required him when the policies were canceled to repay to the company his pro rata part of the commissions on the unearned premiums.

Appellant raises the question that Ben S. Street, agent of the company, did not have the authority in any way to change or modify the written contract, and, therefore, the verbal contract was not enforceable. Some evidence was introduced by appellant that tended to show that he did not have that authority. However, we do not deem it necesary to pass upon that question, in order to decide what we consider the rights of the parties in this action. Appellant further contends that as appellee failed to plead that the verbal contract was left out of the written contract by mutual mistake or by its fraud, that parol evidence offered by him is incompetent and cannot properly be considered in the solution of the question involved. We think appellant in error, because appellee alleges and offers evidence to that effect; that the written contract was modified and changed by the agreement made with the agent of the company, which gave him the full right to retain all of his commissions on farm policies except as heretofore set out. That part of the written contract referred to is as follows:

. "Section No. 9—That I will return to the company all unearned commissions on return of premiums on policies canceled pro rata or otherwise and I will pay back to the company all advances made to me for commissions and fees on notes that are not paid within sixty days after maturity; and it is understood and agreed that in order to acquire the right to charge back advanced commissions and fees on delinquent notes the company shall not be required to sue the makers of such notes, it being understood that when the notes upon which I have been charged back for commis-

sions and fees are paid, I am to be credited the amount of such charge back, less any expense incurred by the company in making the collection by suit.''

The above quoted section provides that appellee agrees to return to the company all unearned commissions on premiums, on policies canceled pro rata, and further agrees to pay back to the company all advances made to him by commissions and fees on notes, etc. He alleges and endeavors to prove that this part of the contract was changed and modified to the extent that he was not required to pay back any unearned commissions paid in cash or on notes executed by policyholders, where the buildings were not old or where there was no mortgage or lien upon the property, or where the title was good, or where he had inspected stoves, pipes, etc., or where there was no overvaluation. He further alleged that the amount sued for by appellant is for premiums on policies that do not come under any of the exceptions referred to.

It is a settled rule of law that any written contract may be varied by the parties before performance, for the reason that the power to enter into a contract equally authorizes them to abrogate or modify.

In Illinois Central Railroad Co. v. Manion, 113 Ky. 7, 67 S.W. 40, 42, 23 Ky. Law Rep. 2267, 101 Am.St.Rep. 345, we said:

"Though the parties to a contract may stipulate that it is not to be varied, except by an agreement in writing, they may, by a subsequent contract not in writing, modify it by mutual consent, and the parol contract will be enforced, unless forbidden by the statute of frauds. In Bishop on Contracts the rule is thus stated: 'Though the written contract has a clause forbidding such oral alteration, and declaring that no change in it shall be valid unless in writing, such provision does not become a part of the law of the land; it is like any other agreement which is superseded by a new one. So that in spite of it an oral alteration may be validly made.' Section 767. 'Any contract may be varied by the parties before performance; for the power from the law to enter into the bargain equally authorizes them to abrogate or modify.'

Section 776. See, also, Imeson & Limerick v. Newport & Covington Bridge Co., 5 Ky.Law Rep. 687; Baum v. Covert, 62 Miss. 113; Lewis v. Yagel [77 Hun. 337] 28 N.Y.S. 833; VanDeusen v. Blum [18 Pick. (Mass.) 229] 29 Am. Dec. 582; Escott v. White, 10 Bush. [(73 Ky.) 169] 175."

We conclude that appellee and appellant, through its agent, were authorized after making the written contract to enter into an oral agreement to modify section No. 9, supra, of the written contract in the way and manner in which it was done.

The question then arises whether or not appellee has proven, as the law authorizes, that the verbal contract claimed in his answer and counterclaim was actually made.

We think that the proper rule to apply to a verbal contract, wherein it undertakes to modify or rescind a written contract, is that the evidence to do so must be clear and convincing; if not so, the written contract must prevail. This rule applies always where a contract is undertaken to be canceled or modified, that the law requires to be in writing. We are unable to see any distinction where the law requires a contract to be reduced to writing by the parties. The same rule should apply to the evidence necessary to modify or rescind it. In so far as it affects the recission or cancellation of a contract because of fraud, misrepresentation, or other permissible reasons, this rule is everywhere recognized, and in fact should not be disputed.

In the case of Dehlinger et ux. v. Graue, 238 Ky. 461, 38 S.W.(2d) 246, this court in discussing the recission or cancellation of a contract of that character approved that rule. See, also, Larmon v. Miller, 195 Ky. 654, 243 S.W. 939; Fields v. Walker, 200 Ky. 710, 255 S. W. 518; Lossie v. Central Trust Co., 219 Ky. 1, 292 S.W. 338; Davis v. Benedict, 4 S.W. 339, 9 Ky.Law Rep. 200; Keeney v. Waters, 135 Ky. 525, 122 S.W. 837.

We have carefully considered the evidence upon the question of the verbal contract and have come to the conclusion that it is not sufficiently clear and satisfactory to us to establish the fact that the written contract was so modified.

The burden of proving the verbal contract is on

the appellee. It is hardly reasonable to our minds that the special agent of the company would have entered into such a contract. It is equally unreasonable that a company of the standing of this one would have permitted its agent to make a contract of that character.

As suggested by counsel for appellant, it is hardly reasonable that an agent would enter into a contract that would be of practically no advantage or benefit to appellant; for if a policy was issued on a farm house for five years and the premium paid by notes in five installments, it being admitted in evidence that the first payment belonged to the agent; then, for one year at least, the risk is carried by the insurance company on the promise that the remainder of the premium will be paid as it becomes due. If a cancellation should be made under the written contract, as it was authorized to do before the end of the year, the insurance company would carry the risk for that time for nothing, and the agent would get his commission without any loss to him.

In establishing the verbal contract, appellee is corroborated in his contention that the verbal contract was made in a very mild way by his son. They both claim that at the time the contract was made, E. M. Ramsey was present. Mr. Ramsey stated when testifying for appellant that he was not present; gave his reason for so stating, which was that at the time the contract was made, he was traveling in the vicinity of Nashville, Tenn. Mr. Street, the special agent, denies making such a contract. As the burden of establishing the contract and making same clear and satisfactory to the court is on appellee, we do not think the contract has been satisfactorily established.

It follows, therefore, that the lower court committed an error in dismissing appellant's petition and adjudging $200 in favor of the appellee on his counterclaim.

Wherefore, the judgment is reversed with directions that judgment be entered in favor of appellant for the amount due it as shown by its pleadings, but not in excess of $1,000, as against the bondsmen, Lewis Holbrook and Milton Duvall.